Date signed September 30, 2011



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | | |
|---|---|---|---|
| In Re: | * | | |
| George Nelson Smith and Susan Smith | * | Case No. | 07-22336-TJC |
| | * | Chapter | 7 |
| | * | | |
| Debtors | * | | |
| ***************************************** | * | | |
| Roger Schlossberg, Chapter 7 Trustee, and Tysons Financial LLC | * | | |
| Plaintiffs | * | | |
| vs. | * | Adversary No. | 09-839 |
| | * | | |
| George Nelson Smith and Susan Smith, et al. | * | | |
| Defendants | * | | |

### <u>MEMORANDUM OF DECISION</u>

Plaintiffs Roger Schlossberg, the Chapter 7 Trustee (the "Trustee") and Tysons Financial

LLC ("Tysons") (collectively "Plaintiffs") filed a four-count amended complaint against

defendants George Nelson Smith and Susan Smith (the "Debtors"), The Smith Law Firm, P.C. ("SLF"), RD Legal Funding, LLC ("RDLF") and RD Legal Funding Partners, LP ("RDLFP") (collectively the "Defendants"). The amended complaint seeks entry of an order (a) declaring SLF to be the alter ego of the Debtors (Count I), (b) substantively consolidating SLF as a debtor in the Debtors' bankruptcy case (Count II), (c) equitably subordinating the claim of RDLF and RDLFP (Count III), and (d) granting judgment in favor of the Plaintiffs against RDLF and RDLFP for aiding and abetting George Nelson Smith's breach of his fiduciary duties (Count IV).

Now, before the Court is a motion to dismiss Counts III and IV filed by RDLF and RDLFP (collectively the "RD Defendants"). SLF joins the motion and also seeks dismissal of Counts I and II of the amended complaint as moot in the event the Court dismisses Counts III and IV. The Plaintiffs oppose the motions. For the reasons that follow, the Court will dismiss Counts III and IV. The Court disagrees, however, that the dismissal of Counts III and IV render Counts I and II legally moot, and therefore does not dismiss those counts.

The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§1334, 157(a) and Local Rule 402 of the United States District Court of the District of Maryland.

**Pertinent Facts as Alleged in the Amended Complaint**

The Debtors filed for chapter 7 bankruptcy relief on December 7, 2007. Debtor George Nelson Smith ("Smith") is a licensed attorney and is the 100% stockholder of the law firm, SLF. He was the only attorney employed at SLF and he represented plaintiffs in a mass tort class action involving Oxycontin product liability claims. The class action settled and approximately $9.9 million of settlement funds are being held by Sylvius Von Saucken of The Garretson Firm Resolution Group, Inc. ("Garretson"). SLF is entitled to receive approximately $3-$3.5 million in legal fees ("Settlement Funds") from the amount being held by Garretson.

Smith did not observe corporate formalities with respect to SLF and failed to maintain complete financial records. SLF's accountant, Barbara Ames ("Ames"), was never provided with cancelled checks, a check register, wage and tax statements required by the Internal Revenue Service (W-2 Forms), and other income statements also required by the Internal Revenue Service (i.e., 1099 Forms). Ames mainly had to rely on oral information provided by Smith to decipher whether expenditures were business-related or personal. All of the personal expenditures incurred by SLF were personal loans to Smith and not income from SLF. Ames was also informed by Smith that the financing provided by the RD Defendants to SLF were loans. The RD Defendants have denied that statement. In addition to the legal services, SLF had been involved in the business of buying and selling cars and real estate.

Prior to bankruptcy, the Debtors borrowed money from Tysons. On request of the Debtors, Tysons increased the principal amount of the loan to $2,640,000 (the "Tysons Loan"), which was secured by a first-position lien on the Debtors' residence in Potomac, Maryland (the "Avenel Property"). Smith stated on Form 1003 Uniform Loan Application that his personal income exceeded $780,000 a year. Tysons relied on that statement when it agreed to refinance the Avenel Property.

On July 1, 2006, Debtors defaulted on the Tysons loan, and as a result, Tysons commenced foreclosure proceedings in the Circuit Court of Maryland for Montgomery County, Maryland. Tysons purchased the residence at foreclosure sale for $1,000,000 and the sale was ratified on April 18, 2007. Ultimately, Tysons sold the property at a loss and filed a complaint

on August 1, 2007 in the Circuit Court for Montgomery County for a $2,027,799 deficiency claim against the Debtors.[1]

Also in 2007, Smith approached Roni Dersovitz, the sole member and the managing member of the RD Defendants, about financing SLF's receivables, specifically the Settlement Funds. RDLF is the investment manager for RDLFP, which finances law firm receivables either through purchasing the receivables or through credit-based lending. Mr. Dersovitz did not conduct an investigation into the Debtors' financial situation, did not conduct a credit check of Debtors' assets, and did not request a copy of SLF's tax returns to verify that it had paid all federal, state, and local taxes. Nor did he inquire what Smith intended to do with the monies provided. At this point, the Debtors and SLF were insolvent. SLF had not filed tax returns in several years. At the time the RD Defendants provided the monies to SLF, Mr. Dersovitz was aware that the Debtors were indebted to Tysons, and understood the Tysons' loan was secured by a lien on the Debtors' residence. Some time later, Smith informed Mr. Dersovitz that he intended to use the monies provided to build a new residence. The Debtors had already used funds from SLF's operating account to pay a total deposit of $245,191 to Equity Homes, LLC to build a residence at 12518 Sycamore View Drive, Potomac, Maryland.

On or about August 31, 2007, SLF and RDLF entered into an Assignment and Sale Agreement for the financing of the Settlement Funds. RDLF agreed to provide $977,352.74 to SLF in exchange for the right to collect $1,277,732.95 of the Settlement Funds. Approximately one month later, on September 25, 2007, SLF and RDLF entered into another Assignment and Sale Agreement which provided that RDLF would pay $1,000,000 to SLF in exchange for the right to collect $1,366,525.32. In total, SLF received approximately $1,977,352.74 as provided

---

[1] The Debtors filed this bankruptcy case while that case was pending. This Court entered a Consent Order and non-dischargeable judgment in the amount of $800,000 plus interest on January 25, 2010. *See* Adversary Proceeding No. 08-790, Docket No. 62.

in the August and September 2007 Assignment and Sale Agreements (collectively the "Assignment Agreements").  Both agreements are governed by New Jersey law.

After the Debtors received the financing from the RD Defendants, they used it to fund an extravagant personal lifestyle.  The Debtors may have used the money to, among other things, (1) purchase four timeshares in Aruba, (2) pay $1,000 a month for Mrs. Smith's parents' timeshare in Aruba, (3) lease a luxury condominium in the name of SLF in Fort Lauderdale, Florida, and (4) purchase the Avenel Property.

## Conclusions of Law

Defendants bring the motions under Fed. R. Civ. P. 12(b)(6), made applicable here by Fed. R. Bankr. P. 7012.  A complaint must contain a "short and plaint statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).   "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his

entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see also Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

The Supreme Court summarized the *Twombly* standard in *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557 (brackets omitted).

*Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*). As further guidance, the Supreme Court noted that the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1937 (citation omitted).

Here, the Plaintiff's theory of the case can be summarized as follows: SLF's assets and liabilities should be consolidated with the Debtors based on either an alter ego theory or substantive consolidation principles. The Court then should determine that the RD Defendants did not purchase the Settlement Funds from SLF, but only made a loan to SLF secured by the Settlement Funds. Therefore, the RD Defendants are creditors of the to-be-consolidated Debtors/SLF estates and the Settlement Funds will be property of the consolidated Debtors/SLF estates. Next, the Court should equitably subordinate the RD Defendants' claims in the

consolidated estates, thus freeing the Settlement Funds for distribution to the creditors of the

Debtors/SLF.  Alternatively, the Court should award damages against the RD Defendants for

aiding and abetting the Debtors in their breach of fiduciary duty.

The Counts in the amended complaint are sequential.  The RD Defendants cannot be

liable on Count III (equitable subordination) or IV (aiding and abetting breach of fiduciary duty)

unless the Plaintiffs can establish their claims under Counts I or II (alter ego or substantive

consolidation, respectively).  This raises a serious ripeness issue with respect to Counts III and

IV.  At argument, the RD Defendants stated they were seriously prejudiced by having Counts III

and IV left unresolved while the litigation on Counts I and II went forward.  In their view, the

amended complaint failed to state a claim against them and they seek to have those claims

resolved.  The Plaintiffs do not oppose this approach.  The Court therefore will address Counts

III and IV and now turns to those counts, beginning with a discussion of equitable subordination.

*Count III*

Count III alleges that the RD Defendants' claim should be equitably subordinated

pursuant to 11 U.S.C. §510(c).  In order to prevail on Count III, in addition to meeting the

elements of equitable subordination, the Plaintiffs must establish that the transactions between

SLF and the RD Defendants were loans and not sales.  Otherwise, the RD Defendants would not

have a claim to be subordinated.  For purposes of this decision, the Court assumes but does not

decide that the transactions were loans.  The Court concludes that the amended complaint does

not state a plausible claim of equitable subordination against the RD Defendants.

Under 11 U.S.C. §510(c), a court may

> (1)  under principles of equitable subordination, subordinate for purposes
> of distribution all or part of an allowed claim to all or part of another
> allowed claim or all or part of an allowed interest to all or part of another
> allowed interest; or

7

(2)  order that any lien securing such a subordinated claim be transferred
to the estate.

Both parties agree that *Stratton v. Equitable Bank, N.A.*, 104 B.R. 713, 730 (D. Md. 1989) provides the applicable standards for equitable subordination: (1) the creditor engaged in inequitable conduct; (2) that misconduct conferred some unfair advantage on the creditor or resulted in injury to other creditors; and (3) the application of equitable subordination is not inconsistent with the provisions of the Bankruptcy Code. *Id*. at 730.  "Proof of . . . participation in actual fraud is not essential; any conduct, even if technically lawful, which violates rules of fair play or good conscience can be deemed inequitable. . . . [The plaintiff] must present evidence of conduct which 'shocks the conscience' of this Court." *Id.* (citation omitted).  The amended complaint fails to meet these standards.

First, the amended complaint fails to state a plausible claim that the RD Defendants engaged in inequitable conduct.  At its core, Plaintiffs' equitable subordination claim is that the RD Defendants made secured loans to SLF knowing that Smith, as 100% owner of SLF, would use the proceeds to support his lavish personal lifestyle.  But the loan transactions themselves are not alleged to be inequitable.  Nor does the amended complaint allege that the transactions harmed SLF.  And it appears such an allegation would be problematic, as the transactions merely accelerated SLF's receipt of the economic benefits of the Settlement Funds.

The Plaintiffs argue that the RD Defendants' alleged knowledge of Smith's personal use of the funds made the transactions inequitable.  There is no dispute, however, that Smith is the 100% owner of SLF.  The Plaintiffs offer no convincing authority to support the contention that SLF's lender has an obligation to be concerned with what SLF's owner does with a distribution of proceeds from a loan transaction that does not harm SLF.

8

Further, the factual allegations in the amended complaint do not support the broad statements that the RD Defendant knew or should have known that Smith was using the transaction proceeds to support his lavish lifestyle.  Plaintiffs allege that the RD Defendants knew that Smith was planning to use the proceeds to build an expensive house.  Am. Compl. at ¶42.   But this allegation is merely that Smith was planning to convert one personal asset (his receipt of cash from SLF) into another personal asset (real estate).  The Plaintiffs do not offer any plausible explanation as to how this knowledge creates an inference of inequitable conduct by the RD Defendants.  Plaintiffs also allege that the RD Defendants knew that the Debtors were indebted to Tysons and that Tysons' debt was secured by the Debtors' residence.  Am. Compl. at ¶41.  Again, Plaintiffs offer no plausible explanation as to how knowledge that the Debtors had a loan from Tysons that was secured by their residence creates an inference of inequitable conduct by the RD Defendants.

As additional allegations of inequitable conduct, the Plaintiffs allege that in entering into the transactions, the RD Defendants gave little regard to SLF's financial condition and failed to conduct usual loan underwriting or credit analysis of SLF.   The Assignment Agreements, however, state that the transactions were sales of the Settlement Funds, and the RD Defendants vigorously argue here that the transactions were sales.  A buyer of assets would have little regard for the seller's use of the proceeds or the resulting financial condition of the seller.  While the Plaintiffs now seek to challenge the characterization of the transactions as loans, no plausible inference can be drawn that the RD Defendants engaged in inequitable conduct merely because they may have consummated the transactions in a way entirely consistent with sales.  To be sure, the Assignment Agreements also gave the RD Defendants a security interest in the Settlement Funds in the event the transactions were later characterized as loans.  The Assignment

Agreements, however, also provided that the transactions were nonrecourse to SLF except in certain circumstances.   Again, viewed in a light most favorable to the Plaintiffs, no plausible inference can be drawn that the RD Defendants engaged in inequitable conduct by failing to undertake due diligence of SLF's financial condition in nonrecourse transactions.   Accordingly, the Court concludes that the amended complaint fails to plausibly allege that the RD Defendants engaged in inequitable conduct.

The amended complaint also fails to allege facts that state a plausible claim that the RD Defendants obtained an unfair advantage as a result of their alleged misconduct.  The RD Defendants obtained two benefits or "advantages" from the transactions: (1) the economic benefits of the transactions, themselves; and (2) the security interest the RD Defendants received in the Settlement Funds.  But the amended complaint does not allege the transactions themselves were economically unfair or unconscionable and there is nothing unfair where a lender contemporaneously takes a security interest in exchange for an advance of new funds.  In this sense, the amended complaint does not allege, for example, that the RD Defendants were existing creditors of SLF who obtained additional collateral or other protections as a result of their misconduct, as often is the case in an equitable subordination claim.

Specifically, the amended complaint states that the RD Defendants "impermissibly took a lien on SLF's collateral for the personal monies advanced in order to gain an unfair advantage over other creditors."  Am. Compl. at ¶87.  But it seems beyond any dispute that the RD Defendants never would have advanced funds without the protections received in the Assignment Agreements, and the amended complaint does not allege otherwise.  The amended complaint merely alleges that the RD Defendants obtained security interests in exchange for newly-loaned funds.  That "advantage" is neither improper nor unfair.

Accordingly, the Court concludes that amended complaint does not state a claim for equitable subordination.

*Count IV*

Plaintiffs allege that Smith owed a fiduciary duty to creditors of SLF because he was its sole member and owner.  They also allege Smith had a fiduciary duty to his personal creditors. They allege that the RD Defendants aided and abetted Smith in breaching his fiduciary duties because they "knew, or should have known, that the Debtors were utilizing [the proceeds] to hinder, delay and defraud legitimate creditors of SLF and the Debtors."

The parties cite several state law cases, primarily from Virginia, but do not address which state's law applies.  Maryland adheres to the *lex doci delicti* rule in analyzing choice of law problems with respect to tort actions.  *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648-49 (Md. 2007); *Lab. Cor. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006).  Under *lex loci delicti*, the law of the state where the tort was committed applies.  *Hood*, 911 A.2d at 844.  If the events giving rise to a tort action occur in more than one state, the court must apply the law of the state where the last injury took place.  *Heffernan,* 925 A.2d at 649.  Section 377 of the Restatement (First) of Conflict of Law states that "[t]he place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."  Restatement (First) of Conflict of Laws §377 (1934).  The commentary explains that "[w]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made."  *Id.* at cmt.a, note 4.  Applying these principles here, the final loss on aiding and abetting a breach of fiduciary duty occurred in the state where the loss occurred.  With respect to the claim that the RD Defendants aided and abetted Smith in breaching his fiduciary duties against SLF, it appears that any loss would have been to SLF which, insofar as the record is concerned, is incorporated

11

and has its principal place of business in Virginia.  Thus, any losses would have occurred in Virginia, and this Court will apply Virginia law for purposes of resolving the motions.

The Supreme Court of Virginia assumed "arguendo, that Virginia recognizes a cause of action for aiding and abetting a breach of fiduciary duty."  *Halifax Corp. v. Wachovia Bank ("Halifax")*, 604 S.E.2d 403, 411-412 (Va. 2004); but cf. *Tysons Toyota Inc. v. Globe Life Ins. Co.*, 1994 WL 717598 (4th Cir. 1994) (recognizing that under Virginia law aiding and abetting a breach of fiduciary duty is a cognizable cause of action which requires constructive notice of a breach of fiduciary duty to hold a third party liable for participation in the breach.).  In its analysis, the *Halifax* court adopted a two prong test to determine whether a party aided and abetted a breach of fiduciary duty.   The court held that, assuming such a cause of action exists, the plaintiff must plead the defendant actively participated in the breach with (1) actual knowledge of the underlying fiduciary duty; and (2) allege actual knowledge of the breach of that fiduciary duty by the primary tortfeasor.  Other subsequent courts have adopted the *Halifax* two prong test to determine liability for aiding and abetting based on the same assumption.  *See Best Medical International, Inc. v. Wittmer ("Wittmer")*, 2007 WL 6013714, *2 (Va. Cir. Ct. 2007); *Calderon v. Aurora Loan Serv., Inc.*, 2010 WL 2306343 (E.D.Va. 2010).

The *Halifax* court adopted the "actual knowledge" requirement in the context of analyzing a claim against a bank that accepted fraudulent checks deposited by a corporate officer.  That officer was embezzling money from the corporation for her personal benefit.  For the purposes of bank liability, the court reviewed the knowledge requirement provided in Article 3 of the Uniform Commercial Code, which states that "[a] person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it."  *Halifax* at **412 (quoting VA Code Ann. §8.1-201(25)).  Nevertheless, the standard articulated in Halifax is not inconsistent with §876(b) of the

Restatement (Second) of Torts, which provides that a third person is liable for the tortious conduct of another if that third person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other . . . ." *Wittmer* at *3 (quoting Restatement (Second) of Torts § 876(b) (1965) (emphasis added)). For that reason, lower courts have subsequently applied the *Halifax* standard in cases in which the actual knowledge requirement of the Uniform Commercial Code is not applicable. *Id.*; *see Calderon v. Aurora Loan Serv., Inc.*, at *6. For purposes of the motions, however, the Court will apply both the actual knowledge and constructive notice standards to the aiding and abetting claim. Accordingly, to state a claim for aiding and abetting a breach of fiduciary duty in Virginia, the Plaintiffs must establish that the RD Defendants (1) actively participated in a breach of fiduciary; (2) with actual or constructive knowledge of the underlying fiduciary duty and of the breach of that duty by the primary tortfeasor. For the reasons that follow, the Court concludes the amended complaint fails to meet these standards.

Here, the amended complaint alleges that both Smith and SLF were insolvent at the time of the transactions. The Plaintiffs argue that Smith owed fiduciary duties to his and SLF's creditors in general reliance on the often-stated principle that officers and directors of corporations owe fiduciary duties to creditors when the corporation is insolvent. The amended complaint alleges that Smith breached these duties by taking the transaction proceeds and spending them for his personal use, without regard to his creditors' claims.

The Court will disregard the mere conclusory allegation that the RD Defendants "knew, or should have known, that the Debtors were utilizing [the proceeds] to hinder, delay and defraud legitimate creditors of SLF and the Debtors." Am. Compl. at ¶93. There are no factual allegations in the amended complaint that support the conclusory statement that the RD

13

Defendants knew or had constructive notice that Smith owed fiduciary duties to his or SLF's creditors or that he was breaching those duties. Initially, the Court notes that the transactions between the RD Defendants and SLF themselves counter any allegation that the RD Defendants had actual or constructive knowledge that SLF or Smith were insolvent. The RD Defendants knew that SLF was set to receive millions of dollars of Settlement Funds, and Smith was its sole owner. Moreover, as discussed above, the only factual allegations addressing the RD Defendants' knowledge are those that state that Smith told the RD Defendants he intended to use the proceeds to purchase a house and that the RD Defendant knew that Tysons held a loan secured by a lien on the Debtors' residence. Am. Compl. at ¶¶41, 42. These statements provide no support for a plausible claim that the RD Defendants had actual or constructive knowledge of the existence of any duty by Smith to his or SLF's creditors resulting from insolvency or of the breach of that duty by Smith.

In fact, the factual allegations in the amended complaint are inconsistent with the allegation that the RD Defendants had actual or constructive knowledge that Smith or SLF were insolvent or that Smith was breaching his fiduciary duties to his creditors. The amended complaint asserts that the RD Defendants "failed to conduct even the most basic due diligence in financing" the Settlement Funds. *Id.* at ¶27. It specifically notes the deposition testimony of Mr. Dersovitz that "he never asked Mr. Smith or SLF what they intended to do" with the proceeds from the transactions. *Id.* at ¶31. It then lists at some length examples of information from SLF that the RD Defendants did not request or obtain, such as tax returns. *Id.* at ¶¶31-39. These allegations are entirely consistent with the RD Defendants' contention that they bought the Settlement Funds. These allegations, however, do not support a plausible claim that the RD

Defendants had actual or constructive knowledge that Smith or SLF were insolvent or that Smith was breaching his fiduciary duties to his or SLF's creditors.

*Counts I and II*

As stated above, Count I seeks entry of an order declaring SLF to be the alter ego of the Debtors, while Count II seeks to have SLF substantively consolidated with the Debtors' estates. SLF argues that, if Counts III and IV are dismissed, Counts I and II should be dismissed as moot. It appears that SLF means that the dismissal of Count III and IV would render Counts I and II not worth pursuing. But it does not appear that the dismissal of Count III and IV would render Counts I and II legally moot. Accordingly, the Court will deny SLF's motion to dismiss Counts I and II.

**Conclusion**

For the foregoing reasons the Court will dismiss Counts III and IV without prejudice to the Plaintiffs filing an amended complaint asserting causes of action consistent with this decision, if they can. The Court will deny the motion to dismiss Counts I and II. A separate order shall issue.

cc:     Debtors
        Debtors' Counsel
        Plaintiffs
        Plaintiffs' Counsel
        Defendants
        Defendants' Counsel
        United States Trustee

**END OF MEMORANDUM**